[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10424
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-00082-TCB-LTW-6

UNITED STATES OF AMERICA,

                                          Plaintiff-Appellee,

versus

MILTON MINTER,
a.k.a. White Boi,

                                          Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 16, 2017)

Before TJOFLAT, WILLIAM PRYOR, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant Milton Minter appeals his 120-month sentence, imposed after pleading guilty to one count of theft of government property and one count of aggravated identity theft. On appeal, he argues that the district court plainly erred by applying a 12-level enhancement under U.S.S.G. § 2B1.1(b)(1)(G), asserting that the loss amount did not exceed $250,000. He also challenges the district court's imposition of a $75,000 fine. After careful review, we affirm.

## I.     BACKGROUND

In March 2015, a federal grand jury charged Defendant and 15 other individuals in an 83-count indictment with crimes stemming from their involvement in a scheme to cash stolen and falsified United States treasury checks. Defendant subsequently pled guilty to Count 28, theft of government property in violation of 18 U.S.C. § 641, and Count 29, aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(2).

In preparation for sentencing, the probation officer prepared a Presentence Investigation Report ("PSR"). As to Count 28, the PSR assigned Defendant a base offense level of 6 under U.S.S.G. § 2B1.1. The PSR applied an 18-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(J), concluding that Defendant was accountable for a loss amount of $4,890,080.93. Other enhancements not relevant to this appeal were applied, resulting in a total offense level of 30. With a total offense level of 30 and a criminal history category of VI, Defendant's

guideline range was 168 to 210 months' imprisonment. He was also subject to a 24-month consecutive statutory minimum sentence as to Count 29 (the aggravated identity theft count). The PSR opined that Defendant did not have the ability to pay a fine. Relevant to this appeal, Defendant objected to the loss amount attributed to him and the corresponding enhancement under § 2B1.1(b)(1)(J).

At the sentencing hearing, the district court heard testimony from several witnesses as to the loss amount. Christopher Jacobsen, a fraud investigations manager of a check authorization and warranty company, testified that, all total, there were approximately 6,000 checks successfully cashed as part of the entire scheme, totaling over $11 million. The value of the checks successfully cashed prior to Defendant's arrest was approximately $4.8 million. He further testified that over $250,000 worth of these checks were cashed using variations of social security numbers with the same first five digits as Defendant's. Defendant testified that he believed he personally cashed between $150,000 to $200,000 worth of checks.

The Government argued that the district court should find the loss attributable to Defendant to be $4.8 million. When asked by the district court what Defendant estimated the loss to be, defense counsel responded, "Less than 550 [thousand]." The court clarified by asking, "Between 250 and 550 [thousand]?" to which defense counsel responded, "Yes." Defense counsel later told the district

court that her own research indicated that the amount "should be less than 550, between 250 and 550." She reiterated that the evidence presented at the hearing supported a loss amount of $250,000.

The district court agreed and concluded that the loss amount was $250,000, stating that Defendant should receive a 14-level enhancement. Defense counsel quickly corrected the court, indicating that under her calculations the Guidelines called for a 12-level enhancement, not a 14-level enhancement.[1] The district court agreed with defense counsel, and leaving all other calculations the same, calculated an amended offense level of 22.

The parties agreed that Defendant's criminal history category should be V, which resulted in an amended guideline range of 77 to 96 months' imprisonment. The district court then asked the parties if it had correctly calculated the guideline range, and defense counsel answered, "Yes, your honor." Consequently, the district court sentenced Defendant to a total of 120 months' imprisonment, consisting of 96 months as to Count 28, and a consecutive 24-month sentence as to Count 29. The court also imposed a $75,000 fine. This appeal followed.

## II.   DISCUSSION

### A.   Loss Amount

---

[1] Under the Guidelines, a defendant is subject to a 14-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(H) if the loss is more than $550,000. U.S.S.G § 2B1.1(b)(1)(H). A 12-level enhancement applies if the loss is more than $250,000. U.S.S.G. § 2B1.1(b)(1)(G).

Notwithstanding his counsel's position at sentencing, Defendant now argues that the district court plainly erred by imposing a 12-level enhancement under § 2B1.1(b)(1)(G). Section 2B1.1(b)(1)(G) of the Guidelines provides for a 12-level enhancement if the loss is more than $250,000. U.S.S.G. § 2B1.1(b)(1)(G). By contrast, § 2B1.1(b)(1)(F), provides for a 10-level enhancement if the loss is more than $150,000. *See* U.S.S.G. § 2B1.1(b)(1)(F). Defendant asserts that he should have received a 10-level enhancement because in stating the loss amount, the court cited a figure of $250,000. In other words, to justify a 12-level enhancement, Defendant argues that the court should have said the words "more than" $250,000, not merely said "$250,000."

We conclude, however, that Defendant invited any alleged error made by the district court. "The doctrine of invited error is implicated when a party induces or invites the district court into making an error. Where invited error exists, it precludes a court from invoking the plain error rule and reversing." *United States v. Silvestri*, 409 F.3d 1311, 1327–28 (11th Cir. 2005) (citation and quotations omitted).

At the sentencing hearing, after the district court stated that Defendant was subject to a 14-level enhancement based on a loss of $250,000, defense counsel informed the court that she thought the proper enhancement was 12 levels, not 14. In advocating for her loss figure, defense counsel stated repeatedly that the loss

5

amount was within the $250,000 to $500,000 range, which corresponds to the 12-level increase under U.S.S.G. § 2B1.1(b)(1)(G) that was imposed by the court. *See* U.S.S.G. § 2B1.1(b)(1)(G). Further, when the district court asked the parties if the guidelines calculations were correct, defense counsel unequivocally answered in the affirmative. There was no suggestion by counsel that the loss figure was precisely $250,000, which would fall within the 10-level enhancement range, but instead counsel indicated that it was somewhere between $250,000–$500,000. Indeed, the Government's expert had testified that over $250,000 in checks had used variations of Defendant's social security number.

Under these circumstances, we conclude that Defendant invited any error in the district court's application of the 12-level enhancement under § 2B1.1(b)(1)(G). *See United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) (concluding that the invited error doctrine precluded a defendant from challenging a term of supervised release where he acknowledged that the court could impose supervised release and repeatedly requested supervised release in lieu of imprisonment). Although we have declined to apply the invited error doctrine where a defendant merely fails to object to the district court's action, *see United States v. Dortch*, 696 F.3d 1104, 1112 (11th Cir. 2012), Defendant unequivocally informed the district court that it had correctly calculated the guideline range. Moreover, Defendant actually requested the particular enhancement level he

6

received.  Indeed, the PSR had calculated a much higher loss figure.  Because any error by the district court with respect to the loss amount enhancement was invited by Defendant, we decline to review his argument on appeal.

### B.     Imposition of a $75,000 Fine

Defendant argues for the first time on appeal that the district court erred by imposing a $75,000 fine because he contends he has no ability to pay the fine.

Ordinarily, we review the district court's fine determination for clear error. *United States v. Lombardo*, 35 F.3d 526, 527 (11th Cir. 1994).  The defendant bears the burden of establishing that he is unable to pay the fine. *United States v. Hernandez*, 160 F.3d 661, 665 (11th Cir. 1998).  However, if the defendant fails to object to the district court's imposition of a fine at the sentencing hearing, we review for plain error,[2] and will reverse the decision only if disregarding the error would result in a "manifest injustice." *Id.*

The Sentencing Guidelines require the district court to impose a fine unless the defendant establishes that he is unable to pay and is not likely to become able to pay.  U.S.S.G. § 5E1.2(a). In determining the fine amount, the district court must consider several factors, including, among other things, the defendant's ability to pay based on his earning capacity and financial resources, any restitution

---

[2]  To establish plain error, "there must be (1) an error (2) that is plain . . . (3) that has affected the defendant's substantial rights" and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Madden*, 733 F.3d 1314, 1320 (11th Cir. 2013).

the defendant is obligated to make, the expected costs of probation, the seriousness of the offense, and the burden the fine puts on the defendant. *Id.* § 5E1.2(d). We have held that the district court need not make explicit findings as to these factors, so long as the record reflects the district court's consideration of the proper factors before it imposes the fine. *Hernandez*, 160 F.3d at 665–666.

Because Defendant failed to object to the fine amount, we review for plain error and will reverse only if the imposition of the $75,000 fine results in a manifest injustice. *See id.* at 665. In a case similar to the Defendant's, we concluded that the district court's imposition of a $15,000 fine would not result in a manifest injustice. *Id.* at 665–66. In that case, the PSR had similarly indicated that the defendant did not have the ability to pay a fine. *Id.* at 666. The defendant in *Hernandez* likewise did not object to the imposition of the fine at sentencing and, as a result, the district court did not make findings explaining its reasons for imposing the fine. *Id.* at 665–66. We nevertheless affirmed the imposition of the fine because the record suggested that the defendant had the ability to pay. *Id.* at 666.

Like our decision in *Hernandez*, we conclude that the district court in the present case did not plainly err by imposing a $75,000 fine because the record shows that Defendant has the ability to pay the fine. Defendant admitted at the sentencing hearing that he had personally cashed between $150,000 and $200,000

worth of stolen checks.  Admittedly, it is not clear what happened to this money.  Nevertheless, Defendant was not ordered to pay restitution for the checks he admitted he cashed.  *See* U.S.S.G. § 5E1.2(d)(4) (indicating that the restitution a defendant is required to make is a factor to be used when determining the amount of a fine).  The PSR also noted that Defendant had a history of employment, a G.E.D., was in his early thirties, and had no physical health problems, all of which suggest that he would have the ability to earn income after being released from prison.  *Cf. Lombardo*, 35 F.3d at 528 (concluding that the district court did not clearly err in imposing a fine in part because of the likelihood that the defendant would be able to pay the fine in the future if his other debts were discharged in bankruptcy).

We acknowledge that the PSR notes that, at that time, Defendant had no assets, earned between $5.25 and $8.00 at several of his past jobs, and has a history of substance abuse.  However, Defendant also reported that he earned $400 per week at his most recent job as a club promoter from 2005 through 2013, and $1,000 per week working as an actor from 2011 to 2012.  In light of these facts, we cannot say that the imposition of the fine has resulted in a manifest injustice.  *See Hernandez*, 160 F.3d at 666.

### III.  CONCLUSION

For the above reasons, Defendant's sentence is **AFFIRMED**.

9

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 16, 2017

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 17-10424-BB
Case Style: USA v. Milton Minter
District Court Docket No: 1:15-cr-00082-TCB-LTW-6

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carol R. Lewis, BB at (404) 335-6179.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion