IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MILTON MINTER, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:15-CR-82-TCB-LTW-6 |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:18-CV-1440-TCB-LTW |

## ORDER AND FINAL REPORT AND RECOMMENDATION

Movant is a federal prisoner who, pro se, challenges under 28 U.S.C. § 2255 his judgment of conviction. (Doc. 656.)[1] Respondent filed a brief opposing the motion. (Doc. 670.)

Movant filed a motion to amend his § 2255 motion to add a new claim. (Doc. 679.) The undersigned grants the motion to amend and, for the reasons discussed below, recommends that the § 2255 motion be denied.

## I.   Background

Movant pled guilty to one count of theft of government property and one count of aggravated identity theft. (Docs. 1, 370.) Attorney Saraliene Smith Durrett represented Movant in the proceedings in this Court and on appeal.

---

[1] All citations to the record are to case number 1:15-cr-82-TCB-LTW.

The stolen property was U.S. Treasury checks issued to Social Security recipients. Movant and several others cashed, or attempted to cash, the stolen checks at large retail stores.

The primary issues at sentencing were the loss amount for which Movant would be held responsible and Movant's leadership role in the crime. (Doc. 544 (tr. of sentencing hr'g).) Respondent presented testimony from Christopher Jacobson, the fraud investigations manager who reviewed the check cashing activity at issue in this case, and Kemie Green, the U.S. Postal Inspector that investigated the case. (*Id.*) Movant testified on his own behalf and presented testimony from a private investigator. (*Id.*)

Jacobson testified that over $11 million in stolen checks were cashed over the course of several years. (*Id.* at 13, 21-22.) Movant was involved in the scheme from approximately February 2012 until June 19, 2013, which was the day before state authorities arrested him for drug crimes. (*Id.* at 22-23, 37-38, 42, 118, 140.) During that time period, Jacobson testified, just over $4.8 million in stolen checks were cashed. (*Id.* at 22-24.)

2

Movant and his cohorts provided social security numbers to the retailers when they cashed most of the checks. (*Id.* at 5-10.) The defendants used either their own social security numbers or random numbers. (*Id.*)

Jacobson testified that the amount of the checks cashed using the first five digits of Movant's social security number was "over 250,000." (*Id.* at 24-25, 45.) There were unsuccessful attempts to cash additional checks using those digits (and others), followed by – just minutes later in many instances – successful attempts using a different social security number. (*Id.* at 9-10, 42-44.) Jacobson testified that checks cashed by Movant or others at his direction using a social security number other than Movant's were not included in the "over 250,000" amount, but were linked to the criminal scheme. (*Id.* at 26, 30-31, 39-45.)

Movant testified that he was responsible for cashing between $300,000 and $400,000 in stolen treasury checks. (*Id.* at 126-127.) Movant testified that he personally cashed $150,000 to $200,000 of that amount and three other persons each cashed approximately $50,000 at his direction. (*Id.* at 126-27, 131-32.)

The U.S. Sentencing Guidelines (the "Guidelines") provide that the loss amount for which the defendant is held responsible increases the defendant's base offense level for theft. U.S. Sentencing Guidelines Manual, § 2B1.1(b) (U.S. Sentencing

3

Comm'n 2016). If the loss amount is "More than $150,000" but less than or equal to $250,000, ten levels are added to the base offense level. *Id.* If the loss amount is "More than $250,000" but less than or equal to $550,000, twelve levels are added. *Id.* And if the loss amount is "More than $550,000" but less than or equal to $1,500,000, fourteen levels are added. *Id.* The higher the adjusted base offense level, the higher the advisory range of imprisonment.

After all evidence was presented at the sentencing hearing, the Court asked Durrett for the amount Movant contended was the appropriate loss amount:

> MS. DURRETT: Less than 550.
>
> THE COURT: Between 250 and 550?
>
> MS. DURRETT: Yes.

(Doc. 544 at 156; *see id.* at 159 (Durrett again stating that range).) The amount Movant testified as his responsibility – $300,000 to $400,000 -- was within the range Durrett identified. The Court also noted that the $393,000 loss amount attributable to the co-defendant with whom Movant admitted to being most involved in the criminal scheme, Lovely Richardson, "fits in that" range. (*Id.* at 156.)

Immediately after Durrett stated that the proper range was between $250,000 and $550,000, Respondent's counsel reminded the Court of Jacobson's testimony that

4

"over 250[,000]" was "put just on [Movant's] Social Security number or slight alterations thereof" and that "these are the conservative numbers that are just their Social Security numbers." (*Id.* at 156-57.) With over $4.8 million in checks cashed during the time Movant was involved in the criminal scheme, Respondent's counsel argued that the loss amount, "at the very lowest," was over $550,000. (*Id.* at 157 ("I don't see how you get below 550 based on all of that evidence."))

Durrett then presented her argument as to why the Court should find the loss amount to be in the $250,000 to $550,000 range. The Court interjected several times during that argument.

When Durrett said there was no evidence that Movant was responsible for more than $550,000, the Court noted that "there was admissible evidence that came in" that "was proper for a sentencing hearing." (*Id.* at 160.) When Durrett said that some co-defendants stated they did not work with Movant, the Court reminded her of a co-defendant who testified that Movant directed her to cash checks approximately thirty-five times in two states. (*Id.* at 58-59, 162 ("What about what all Ashley Posey said?")) And the Court noted that Movant's fingerprints were found on checks in arguably the most culpable co-defendant's – Maurice Shuler – possession when Shuler was arrested. (*Id.* at 54-55 (Green's testimony about the fingerprints), 163.)

5

After hearing all the evidence and the argument discussed above, the Court stated: "I am going to find that the loss amount was $250,000. I have not been satisfied by a preponderance of the evidence that the Government has proved more, so we . . . add 14 levels" to the base offense level calculated under the Guidelines. (*Id.* at 167.)  As noted above, fourteen levels are added only if the loss amount is more than $550,000 but less than or equal to $1,500,000.

The following exchange then occurred:

MS. DURRETT: Can I be heard? I just have one thing to say. Maybe I am reading the wrong guidelines. I think it is a plus 12.

THE COURT: Oh, you know what? I wrote my number down here wrong with that. Let me see. Hold on just a second. Yeah, it is plus 12 if it is only 250, and that is a – so that is going to be 12, not 14. And that is a very generous perspective in this case.

MS. DURRETT: Thank you, Your Honor.

THE COURT: But let's go back and count again. 6 for the base offense level, 12 for the loss amount being $250,000, that is 18.

(*Id.* at 167-68.)  As noted above, twelve levels are added only if the loss amount is *more* than $250,000 but less than or equal to $550,000.  If the loss amount is *precisely* $250,000, only ten levels are added.

6

The Court then added additional levels for the number of victims and Movant's leadership role in the crimes, deducted levels for Movant's acceptance of responsibility, and applied Movant's criminal history score to arrive at the advisory range of imprisonment under the Guidelines. (*Id.* at 168.)  Counsel for both parties stated that the Court had correctly calculated the Guidelines range. (*Id.*)

Counsel then made their final pleas for a particular sentence.  In his argument, Respondent's counsel indicated three times, without objection or correction, that the Court had found the applicable loss amount range was more than $250,000 but less than $550,000. (*See id.* at 170 ("You found that he is responsible for $250,000 to $550,000 in checks."), 176 ("250,000 . . . is sort of the bottom end of the loss you found . . . ."), 177 ("[W]e would recommend at least 250,000 [in fines] because that is the bottom end of the loss that you found . . . .").)

As for Movant's role in the check-cashing scheme, the Court found from the evidence presented at sentencing that Movant was an organizer or leader of the crime and the scheme involved five or more participants or was otherwise extensive. (*Id.* at 167); *see* U.S.S.G. § 3B1.1.  That finding increased Movant's base offense level four levels. *Id.*

A defendant "does not have to be the sole leader or kingpin . . . in order to be considered an organizer or leader within the meaning of the Guidelines." *United States v. Vallejo*, 297 F.3d 1154, 1169 (11th Cir. 2002). Courts consider the following factors in deciding whether to apply the four-level enhancement:

> (1) exercise of decision-making authority, (2) nature of participation in the commission of the offense, (3) recruitment of accomplices, (4) claimed right to a larger share of the fruits of the crime, (5) degree of participation in planning or organizing the offense, (6) nature and scope of the illegal activity, and (7) degree of control and authority exercised over others.

*Id.*

In his testimony at sentencing, Movant did not dispute that the check-cashing scheme involved five or more participants or was otherwise extensive. Movant insisted, though, that he worked with and directed only three persons in the scheme: Lovely Richardson, Ashley Posey, and Terrell Washington. (Doc. 544 at 119-26, 131-32.) When asked why his fingerprints were on checks in Maurice Shuler's possession, Movant simply said "I have no idea." (*Id.* at 123-24.) Movant also could not explain why he was "hanging together and travelling [sic] together" with other co-defendants despite his claim that he was not involved in their check-cashing activity. (*Id.* at 133-34.)

8

Case agent Green told a very different story about Movant's involvement. Green testified that the evidence showed that Movant gave checks to six people for cashing as part of the scheme. (*Id.* at 75.)

That evidence included Movant's fingerprints on Shuler's checks. The evidence included Shuler's statements to Respondent that Movant approached Shuler about cashing the checks, Movant gave Shuler the checks and social security numbers, and Shuler used those numbers to cash checks. (*Id.* at 55-57.) Shuler also told Respondent that Movant provided checks to Orlando Washington (Terrell's brother) and other co-defendants. (*Id.*)

Co-defendant Osiris Hernandez told Respondent that Movant "approach[ed] her in regards to seeing if she would cash some treasury checks," to which she agreed; Movant gave her fake identifications for use in cashing the checks; and both Washington brothers accompanied Movant and Richardson on check-cashing trips. (*Id.* at 59-62.) Posey told Respondent that Movant was one of "the bosses in this operation," Hernandez said Movant "was a person running it," and Jared Harris, who also cashed checks at Movant's urging, described Movant as "the mastermind" of the operation. (*Id.* at 59-62, 111-12.) Finally, Green testified about video evidence she reviewed:

9

We would see the same individuals cashing the checks at the Wal-Marts. Basically doing the same thing, which was going up, providing the check, showing an ID, typing in a Social Security number, and then obtaining the funds and then walking out. And a lot of those videos either had the same defendants or individuals that were going in, or they would be in together as a group.

Q. Is it fair to say that you started to see the same group of people doing the checks?

A. Yes.

Q. Did you view videos of each of the 16 defendants in a Wal-Mart or a Kroger store alone or with some of the others cashing checks?

A. Yes.

(*Id.* at 66.)

After adding four levels for the loss amount and four levels for the leadership enhancement, the Court arrived at a Guidelines' advisory range of imprisonment of seventy-seven to ninety-six months for the theft of government property. (*Id.* at 168.) The aggravated identity theft crime carried a mandatory, consecutive sentence of twenty-four months. 18 U.S.C. § 1028A. The Court imposed a total prison sentence of 120 months – ninety-six months for stealing the checks and the required additional twenty-four months for stealing the identifications. (Doc. 544 at 188.) The Court found that to be "a just sentence . . . [and] a reasonable sentence" after "carefully

10

consider[ing] all of the facts in this case . . . as well as the sentencing factors set forth in 18 USC section 3553(a)." (*Id.* at 190.)

On appeal, still represented by Durrett, Movant claimed that the Court erred by using a twelve-level, rather than a ten-level, enhancement for the loss amount "because in stating the loss amount [at sentencing], the [C]ourt cited a figure of $250,000." *United States v. Minter*, 716 F. App'x 880, 882 (11th Cir. 2017). "In other words, to justify a 12-level enhancement, [Movant] argue[d] that the court should have said the words 'more than' $250,000, not merely said '$250,000.'" *Id.* at 882-83.

The court of appeals found that Movant invited the alleged error when Durrett "stated repeatedly [at sentencing] that the loss amount was within the $250,000 to $500,000 range, which corresponds to the 12-level increase" and "unequivocally answered in the affirmative" when the Court asked counsel if its Guidelines calculations were correct. *Id.* at 883. "There was no suggestion by counsel that the loss figure was precisely $250,000, which would fall within the 10-level enhancement range . . . ." *Id.* The court of appeals noted that Jacobson "testified that over $250,000 in checks had used variations of [Movant's] social security number." *Id.*

11

Durrett sent Movant a copy of the court of appeals' opinion with a letter noting the finding that she "invited the error in the guidelines calculation." (Doc. 656-1.) Durrett informed Movant that he could seek relief under 28 U.S.C. § 2255. (*Id.*) Movant accepted that invitation.

Movant asserted the following claims in his § 2255 motion:

1.     Durrett rendered ineffective assistance and denied Movant due process by providing the Court with the wrong loss amount and not objecting to the Court's application of a twelve-level enhancement;

2.     the Court denied Movant due process by using facts regarding dismissed and uncharged crimes to enhance his sentence, in violation of *Nelson v. Colorado*, 137 S. Ct. 1249 (2017);

3.     Durrett rendered ineffective assistance and denied Movant due process by not raising on appeal the *Nelson* error;

4.     Durrett rendered ineffective assistance and denied Movant due process by not objecting at sentencing to the Court's inclusion in the loss amount of money not described in the counts of the indictment to which Movant pled guilty; and

5.     Durrett rendered ineffective assistance and denied Movant due process by not objecting at sentencing to the four-level leadership role enhancement.

(Doc. 656.) In his motion to amend, Movant seeks to add a claim that the Court erred in denying Durrett's request at sentencing for a downward variance of twenty-two

12

months, which was the amount of time Movant had been in federal custody.  (Doc. 679.)

Respondent contends that Movant defaulted his claims of sentencing error based on *Nelson* by not raising those claims on appeal.  (Doc. 670.)  Respondent contends that Movant has not shown that Durrett rendered ineffective assistance to excuse that default and has not otherwise shown ineffective assistance.  (*Id.*)

## II.   Legal Standards For Relief Under 28 U.S.C. § Section 2255

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  A sentence is subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice.  *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  "To obtain collateral relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).

"Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a [] § 2255 challenge" unless the movant

13

shows "both cause for his default as well as demonstrating actual prejudice suffered as a result of the alleged error." *Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004). "[T]o show cause for procedural default, [a § 2255 movant] must show that some objective factor external to the defense prevented [him] . . . from raising his claims on direct appeal and that this factor cannot be fairly [attributed] to [his] own conduct." *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004). Counsel's failure to raise a claim may constitute cause for a procedural default, but "[n]ot just any deficiency in counsel's performance will do[.] . . . [T]he assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). To

14

establish deficient performance, a movant must establish that no objectively competent lawyer would have taken the action that his lawyer took or would have failed to take the action he contends the lawyer should have taken. *Id.* at 1315.

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Id.* at 697.

## III.    Analysis

Movant's claims that the Court improperly considered uncharged conduct, violated *Nelson*, and failed to credit him for pre-trial custody are procedurally defaulted because he did not raise them on direct appeal. Movant blames that failure on Durrett, so he must show that Durrett rendered ineffective assistance by not raising the claims. *See supra* Part II. The Court discusses each ineffective assistance claim below.

15

A.   Loss Amount

Movant claims that the Court imposed the twelve-level enhancement for a loss amount of more than $250,000 because of Durrett's ineffectiveness.  That claim is based on the erroneous premise that the Court found the loss was precisely $250,000.

While the Court stated at sentencing that it found "the loss amount was $250,000," it applied the enhancement for a loss amount of more than $250,000. (Doc. 544 at 167-68.)  The Court did so after first applying the enhancement for a loss amount of more than $550,000.  (*Id.*)  That the Court performed the calculation twice and arrived, both times, at an enhancement applicable only for a loss of more than $250,000 indicates that the Court found the loss to be over $250,000.

The Court's calculation was consistent with all the evidence.  Jacobson testified that over $250,000 in checks were cashed using most of the digits in Movant's social security number, alone.  *Supra* Part I.  Movant repeatedly testified that he and three others cashed checks.  *Id.*  Movant estimated the amount that each of the four cashed and put the total at over $250,000.  *Id.*

The Court's statements at sentencing also indicate that the Court knowingly applied the twelve-level enhancement because it had found the loss amount to be over $250,000.  The Court noted the evidence that Movant's primary accomplice (by

16

Movant's own admission) cashed $393,000 in checks, Movant directed another accomplice to cash approximately thirty-five checks, and Movant's fingerprints were on several checks in the possession of arguably the most culpable co-defendant. It is illogical, if not absurd, to suggest that despite the Court's numerous comments and its statement that the twelve-level enhancement was "a very generous perspective in this case," the Court did not find the loss amount to be more than $250,000. (*See id.* at 167-68.)

Movant's argument is based solely on just a few words cherry picked from everything the Court, counsel for both parties, and all the witnesses said at the sentencing hearing. Those words – "I am going to find that the loss amount was $250,000" – cannot be viewed in isolation given the extensive evidence presented and the Court discussions with counsel at the hearing. The Court calculated the Guidelines level for the loss amount twice and then used that number in calculating the total adjusted offense level. When Counsel confirmed the Court's calculation based on a loss amount of more than $250,000, the Court did not waver or change its calculation, as it would if it had found that the loss amount was precisely $250,000.

17

Durrett thus was not ineffective for not objecting to the Court's Guidelines calculation. Nor was Movant denied due process by Durrett's decision not to object. There was no error.

B.     Leadership Role

Ample evidence was presented at sentencing that Movant was a leader or organizer in the check-cashing scheme and that at least five people participated in that scheme. *Supra* Part I. Green testified about several of those participants' statements implicating Movant. *Id.* Three of those participants pegged Movant as a leader, organizer, or boss. *Id.* Hernandez, alone, saw Movant work with five people to cash checks, and Shuler also connected Movant to several people. *Id.*

Movant's own testimony supported the four-level enhancement. Movant admitted to directing three others in the scheme and to receiving help from others. Shuler's and others' statements corroborated that. *Id.* Forensic evidence – Movant's fingerprints and video surveillance – also corroborated it. *Id.*

Because the evidence clearly supported the four-level enhancement, the Court's application of that enhancement cannot be blamed on Durrett. Durrett was not deficient for not objecting to the enhancement, and there is not a reasonable probability that the Court would not have applied it had Durrett objected.

18

C.    Uncharged Conduct

Movant complains that in determining the loss amount and scope of the crimes, the Court used conduct not charged in, and not within the scope of, the two counts of the indictment to which Movant pled guilty.  The Guidelines refer to such conduct as "relevant conduct." *See* U.S.S.G. § 1B1.3; *Witte v. United States*, 515 U.S. 389, 393 (1995).  "Under the [] Guidelines, the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction." *Witte*, 515 U.S. at 393.

Although the use of relevant conduct long has been permitted in calculating the advisory range of imprisonment under the Guidelines, Movant contends that it is no longer so after the U.S. Supreme Court's recent decision in *Nelson.*  Movant is wrong.

*Nelson* involved one question: "When a criminal conviction is invalidated by a reviewing court and no retrial will occur, is the State obliged to refund fees, court costs, and restitution exacted from the defendant upon, and as a consequence of, the conviction?" *Nelson*, 137 S. Ct. at 1252.  The Supreme Court answered yes, finding that a state law that "retains conviction-related assessments unless and until the prevailing defendant institutes a discrete civil proceeding and proves her innocence

19

AO 72A
(Rev.8/82)

by clear and convincing evidence . . . offends the Fourteenth Amendment's guarantee of due process." *Id.*

*Nelson* had nothing to do with the Guidelines, criminal sentencing in federal court, or any cases not involving convictions set aside by a court. The case concerned only a state government's deprivation of property without due process, and the petitioners simply sought "restoration of funds they paid to the State." *Id.* at 1257. The law established in *Nelson* is this: "To comport with due process, a State may not impose anything more than minimal procedures on the refund of exactions dependent upon a conviction subsequently invalidated." *Id.* at 1258.

*Nelson* does not apply to Movant's claim that the Court could not use conduct related to uncharged or dismissed crimes in sentencing Movant. Movant wrongly equates the *Nelson* petitioners' loss of money paid as a result of a conviction to the amount of loss the Court calculated and used to determine Movant's prison sentence. (*See* Doc. 656 at 8.)

*Nelson* simply does not apply to this case at all. Movant's contrary claim requires a finding that the Supreme Court silently – i.e., without mentioning it in a case not even involving it – overruled its prior precedent permitting federal courts to use relevant conduct in calculating an advisory range of imprisonment under the

20

Guidelines.  But this Court is powerless to find that the Supreme Court did that; it is the Supreme Court's "prerogative alone to overrule one of its precedents."  *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) (quotation marks omitted).

Federal courts have rejected claims like Movant's that *Nelson* silently outlawed the use of relevant conduct under the Guidelines. *See, e.g., United States v. Johnson*, No. 16-4146, 2018 WL 1876018, at *17 n.19 (10th Cir. Apr. 19, 2018) (noting that "*Nelson* doesn't even mention" prior precedent permitting use of relevant conduct and finding "no reason to presume" that *Nelson* silently overruled that precedent); *United States v. Stanback*, 726 F. App'x 961, 962 n.2 (4th Cir. 2018); *United States v. Tegeler*, 309 F. Supp. 3d 728, 731 (D. Neb. 2018) (finding that § 2255 movant's claim was "premised on one underlying defect: *Nelson* simply has no bearing on the [movant's] case"); *Benton v. United States*, No. 9:18-CV-68, 2018 WL 3035777, at *1 (E.D. Tex. June 19, 2018) ("*Nelson* does not address the use of relevant conduct in sentencing."); *Miller v. United States*, No. 09-20031-01, 2018 WL 1693372, at *2 (D. Kan. Apr. 5, 2018) ("The Supreme Court did not find [in *Nelson*] that it was unconstitutional to consider relevant conduct, including conduct that was not charged.").  Movant has not identified a court that has accepted his argument regarding *Nelson*, and the Court has found none.

21

Because *Nelson* does not apply to this case or overrule the precedent permitting the use of relevant conduct, Durrett was not deficient for not arguing otherwise on appeal. And Movant cannot show that Durrett was deficient in not pressing a general due process challenge to the use of uncharged conduct because Durrett asserted just such a claim before sentencing. (Doc. 495 at 4-6); *see Griffin v. United States*, 204 F. App'x 792, 795 (11th Cir. 2006) ("It is not enough to show that . . . counsel could have done more."); *Bravo-Zamora v. United States*, No. 1:11cv494-MHT, 2013 WL 4851609, at *6 (M.D. Ala. Sept. 10, 2013) ("The fact that [counsel's] arguments . . . were not successful does not entitle [petitioner] to any relief based on this claim of ineffective assistance of counsel.").

D.   Credit For Pre-Trial Custody

Movant claims that the Court wrongly refused to reduce the prison sentence it imposed by the almost two years Movant spent in federal custody before sentencing. That claim is defaulted because Movant did not raise it on appeal.

At sentencing, Durrett sought credit for Movant's pre-trial custody. (Doc. 544 at 179-81.) The Court denied the credit because federal law requires the Bureau of Prisons (the "BOP") to provide that credit in execution of the sentence. (*See id.* at 181-82, 188.)

22

There was no valid basis for Durrett to argue on appeal that the Court erred in denying the credit at sentencing and leaving the matter to the BOP. Movant's argument that the Court erred "is predicated on the Eleventh Circuit's recent decision in U.S. v. Jacinto-Gonzalez." (Doc. 679 at 1.) Once again, Movant relies on a court decision that does not apply to this case.

The district court in *Jacinto-Gonzalez* also rejected a defendant's request that the court order, as part of its judgment, that the defendant receive credit for time served in pre-trial custody. *United States v. Jacinto-Gonzalez*, 727 F. App'x 613, 615 (11th Cir. 2018). The district court apparently shared the defendant's concern that the BOP would not give him credit for that time, which was approximately six months. *Id.* The district court reduced by six months the prison sentence he was going to impose to "essentially . . . give[] him credit for the time served." *Id.* Thus, even though the district court refused to expressly order that the defendant receive credit for time served, the defendant "effectively was getting credit." *Id.*

The court of appeals held that the district court improperly supplanted the BOP's sole authority to calculate time served by reducing the sentence by the amount of time the defendant had served. *Id.* at 616. "[I]t is the Attorney General, through

23

the Bureau of Prisons, and not the district court that computes credit for time served." *Id.* at 615; *see* 18 U.S.C. § 3585(b).

Unlike the district court in *Jacinto-Gonzalez*, the Court did not tread on the BOP's authority in this case. Indeed, the Court rejected Movant's request that it do essentially what the district court in *Jacinto-Gonzalez* did: reduce the sentence, via a downward departure from the Guidelines range, by the amount of time spent in pre-trial custody. *Jacinto-Gonzalez* thus does not provide any support for Movant's claim that the Court erred.

The Court did exactly what *Jacinto-Gonzales* noted was the appropriate procedure: it left it to the BOP to calculate the credit for time served in pretrial custody. *See United States v. Wilson*, 503 U.S. 329, 333-34 (1992) (rejecting "argument that § 3585(b) authorizes a district court to award credit at sentencing" and holding that the BOP must compute the credit after the sentence commences). Durrett thus reasonably decided not to claim on appeal that the Court improperly denied credit at sentencing for Movant's time in pretrial custody.

The U.S. Supreme Court has repeatedly emphasized that criminal defense counsel "should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt*

24

*v. Titlow*, 134 S. Ct. 10, 17 (2013). Courts must faithfully apply the "'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Id.* That is because "the *Strickland* test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer could have acted, in the circumstances, as defense counsel acted at trial." *Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1299 (11th Cir. 2014) (quotation marks omitted).

Movant has not overcome that strong presumption with regard to Durrett's representation. None of his claims of ineffective assistance of counsel has merit.

## IV.   Certificate Of Appealability ("COA")

A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate

25

whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," a COA should issue "only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (quotation marks omitted).

A COA is not warranted here because it is not reasonably debatable that Movant is not entitled to relief on his claims. Movant has not shown that Durrett rendered ineffective assistance on any issue or otherwise violated his constitutional rights, much less made a substantial showing of the denial of such rights.

## V.   Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Movant's motion to vacate sentence under 28 U.S.C. § 2255 [656] and a certificate of appealability be

AO 72A
(Rev.8/82)

**DENIED** and that case number 1:18-cv-1440-TCB-LTW be **DISMISSED**. Movant's

motion to amend the § 2255 motion [679] is **GRANTED NUNC PRO TUNC**.

**SO ORDERED & RECOMMENDED** this 13 day of August , 2018.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

27